Kerry Eugene MOORE, Appellant

v.

The STATE of Texas, Appellee.

No. 10–02–00076–CR.

Court of Appeals of Texas,
Waco.

July 21, 2004.

Phil Robertson, Robertson, Robertson & Silas, Clifton, for Appellant.

Dale S. Hanna, Johnson County District Attorney, David W. Vernon, Johnson County Asst. District Attorney, Cleburne, for Appellee.

Before Chief Justice GRAY, Justice VANCE, and Justice REYNA.[*]

## OPINION

FELIPE REYNA, Justice.

Kerry Eugene Moore's conviction for retaliation arises from an altercation between Moore and a school superintendent. The State charged Moore with assault on a public servant and retaliation. A jury acquitted Moore on the assault charge but convicted him of retaliation. Moore contends that the evidence is legally and factually insufficient to support his conviction and that the court erred by: (1) failing to quash the indictment or require the State to elect whether to prosecute him for assault or retaliation; (2) refusing to allow impeachment of the superintendent with prior misdemeanor convictions more than ten years' old or to allow cross-examination of character witnesses regarding those convictions; (3) refusing to allow him to call witnesses to vouch for his truthful character; (4) denying his request for certain defensive instructions in the charge; and (5) denying his motion for mistrial alleging a *Brady* violation.

We hold that the evidence is sufficient to support the conviction, that the indictment was proper and no election was required, that the court did not abuse its discretion by excluding evidence or cross-examination of the superintendent's prior misdemeanor convictions because the probative value of those convictions is substantially outweighed by the danger of unfair prejudice, that the court did not abuse its discretion by refusing to permit him to call character witnesses because the State did not attack his character for truthfulness,

that the court properly refused the requested instructions, and that no *Brady* violation is shown. Accordingly, we affirm the conviction.

## BACKGROUND

To facilitate our discussion of Moore's contentions, we provide a brief factual background. Moore's wife Karen was a counselor employed by the Venus Independent School District. Johnnie Hauerland was the superintendent of the district at that time. Karen resigned her position because of a dispute over the legality of the district's policies regarding the manner in which employees were to report suspected child abuse.[1]

When Karen resigned, she retained confidential student records that she had maintained in the course of her employment. Relying on a provision of the Venus ISD's standard employment contract, Hauerland withheld Karen's final paycheck until she returned or accounted for the retained records. Venus ISD and the Moores consulted attorneys, who exchanged correspondence regarding the dispute.

On the date in question, Kerry Moore went to the Venus ISD offices to try to get Karen's check. The payroll director told Moore that he would have to speak with Hauerland. Moore demanded the check from Hauerland. Though it is disputed how the altercation commenced and how it concluded, Moore and Hauerland ended up on the ground engaged in a struggle. Other school employees physically removed Moore from the premises. Several witnesses testified that as Moore was being

* This case was submitted with former Chief Justice Davis on the panel, but he resigned effective August 4, 2003. Justice Reyna, who took the oath of office on January 5, 2004, participated in the decision of the Court.

1. The district required employees to first report suspected abuse to school officials before reporting it to a law enforcement or other agency.

escorted away, he said that he would come back and "get" Hauerland after being released on bail. Moore denied making this statement.

## LEGAL AND FACTUAL SUFFICIENCY

Moore contends in his sixth issue that the evidence is legally and factually insufficient to establish: (1) that he threatened to harm Hauerland; (2) that he acted with the requisite intent or knowledge; or (3) that Hauerland was acting as a public servant.

In reviewing a claim of legal insufficiency, we view the evidence in a light most favorable to the verdict and determine whether any rational trier of fact could have found the essential element beyond a reasonable doubt. *Jackson v. Va.*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *Herrin v. State*, 125 S.W.3d 436, 439 (Tex.Crim.App.2002). We resolve any inconsistencies in the evidence in favor of the verdict. *Curry v. State*, 30 S.W.3d 394, 406 (Tex.Crim.App.2000).

The Court of Criminal Appeals has recently clarified the appropriate standard of review for a factual insufficiency claim.

There is only one question to be answered in a factual-sufficiency review: Considering all of the evidence in a neutral light, was a jury rationally justified in finding guilt beyond a reasonable doubt? However, there are two ways in which the evidence may be insufficient. First, when considered by itself, evidence supporting the verdict may be too weak to support the finding of guilt beyond a reasonable doubt. Second, there may be both evidence supporting the verdict and evidence contrary to the verdict. Weighing all the evidence under this balancing scale, the contrary evidence may be strong enough that the beyond-a-reasonable-doubt standard

could not have been met, so the guilty verdict should not stand.

*Zuniga v. State*, No. 539–02, 144 S.W.3d 477, 484, 485, 2004 WL 840786, *7 (Tex. Crim.App.2004).

### INTENTIONALLY AND/OR KNOWINGLY THREATENING TO HARM HAUERLAND

 A jury may infer intent or knowledge from "the acts, words, and conduct of the accused." *Hart v. State*, 89 S.W.3d 61, 64 (Tex.Crim.App.2002) (quoting *Manrique v. State*, 994 S.W.2d 640, 649 (Tex. Crim.App.1999)). Here, the jury heard ample evidence from which a rational trier of fact could infer that Hauerland intentionally and knowingly threatened to harm Hauerland.

According to Hauerland, Moore threatened to "kick [his] butt" if Hauerland did not give Moore Karen's paycheck. When Hauerland refused, Moore pushed him against the wall and tried to hit him. As Moore was escorted from the premises, he said that after making bail he would come back and "get [Hauerland]." Hauerland construed this to be a threat.

School receptionist D'Nan Dakan testified that Moore grabbed "Hauerland by the lapel and jammed him up against the wall." She testified that "it was no accident" and that it appeared to her that Moore intended to harm Hauerland. As Moore was being physically escorted from the premises, he said that after making bail he was "going to come get [Hauerland]."

Bookkeeper Michelle Salazar provided testimony substantially similar to Dakan's. Salazar construed Moore's closing remark as a threat on Hauerland's life. A school bus mechanic likewise testified that Moore threatened to "get" Hauerland.

Conversely, Moore testified that Hauerland and he "tripped over each other's feet" in the office and scuffled. Moore denied being physically escorted from the premises and denied threatening to "get" Hauerland later.

From this evidence, a rational trier of fact could have inferred that Moore threatened to harm Hauerland after being release from jail and that he did so intentionally and knowingly. This same evidence is factually sufficient to establish that Moore intentionally and knowingly threatened to harm Hauerland.

### HAUERLAND'S STATUS AS A PUBLIC SERVANT

■ It is undisputed that Hauerland was a school superintendent at the time of the altercation. A "public servant" is "a person elected, selected, appointed, employed, or otherwise designated as . . . an officer, employee, or agent of government." TEX. PEN.CODE ANN. § 1.07(a)(41)(A) (Vernon Supp.2004). Thus, Hauerland was a public servant.

However, Moore argues that Hauerland was acting outside the course and scope of his duties as superintendent because it was unlawful for him to withhold Karen's check. The parties presented conflicting evidence regarding whether Hauerland was acting lawfully in this regard. Thus, a rational trier of fact could have concluded beyond a reasonable doubt that Hauerland was acting as a public servant when he withheld Karen's check. This same evidence is factually sufficient to support a finding on this issue.

Accordingly, we overrule Moore's sixth issue.

### THE ALLEGATIONS OF THE INDICTMENT

Moore contends in his fourth issue that the court erred by failing to grant his motion to quash the indictment because the indictment failed to provide adequate notice of the manner and means by which he threatened to harm Hauerland. He contends in his seventh issue that the court should have required the State to elect whether it intended to prosecute him for assault or retaliation because these offenses are *in pari materia*. We reject these contentions because the indictment provided adequate notice and no election was required.

### ADEQUACY OF NOTICE

■ The indictment alleges in pertinent part that on or about the date in question Moore

> did then and there intentionally or knowingly threaten to harm another, to-wit: J. Haverland, a public servant, by an unlawful act in retaliation for or on account of the services or status of the said J. Haverland as a public servant, to-wit: superintendent of the Venus Independent School District, Venus, Texas, said unlawful act being to harm J. Haverland, and said threat was communicated to J. Haverland in person.

Moore contends that this case is governed by *Doyle v. State*, in which the Court of Criminal Appeals held that an indictment failed to provide adequate notice where the indictment alleged in pertinent part that the defendant "threatened to kill the said Dan Gibbs on account of the services of the said Dan Gibbs as a judge in a prior lawsuit in which the defendant was a party." 661 S.W.2d 726, 729 (Tex. Crim.App.1983). The Court found the indictment lacking in specificity because the "alleged threat could have been conveyed in a number of ways, including: face to face in person, over the phone directly, through a third party, or through the mail." *Id.* at 730.

We construe the holding of *Doyle* to be that the indictment there was lacking because it failed to allege the manner and means by which the defendant conveyed the threat to kill Judge Gibbs. Here, the indictment alleges that Moore communicated a threat to harm Hauerland to him "in person." Thus, the indictment provided adequate notice of the manner and means by which Moore conveyed the threat to harm Hauerland. *Cf. id.* Accordingly, we overrule Moore's fourth issue.

### ELECTION

■ Moore contends in his seventh issue that the trial court should have required the State to elect whether it intended to prosecute him for assault or retaliation because both counts alleged assaults on a public servant and because these offenses are *in pari materia.*

Moore did not argue in the motion to elect or in the hearing on that motion that these offenses are *in pari materia.* Accordingly, he has failed to preserve this aspect of his seventh issue for our review. *See* TEX.R.APP. P. 33.1(a)(1).

■ An election is required when an indictment alleges the commission of a single offense but the State offers evidence at trial that the accused committed the offense alleged more than once. *See Scoggan v. State*, 799 S.W.2d 679, 680 n. 3 (Tex.Crim.App.1990); *Brantley v. State*, 48 S.W.3d 318, 322 n. 1 (Tex.App.-Waco 2001, pet. ref'd). Here, the indictment alleges two separate offenses, and the State offered evidence that Moore committed the two offenses alleged. Thus, no election was required.

Accordingly, Moore's seventh issue is overruled.

### IMPEACHMENT EVIDENCE

Moore's first and third issues concern Hauerland's three prior misdemeanor convictions: a 1987 theft conviction; a 1988 theft conviction; and a 1989 DWI conviction. Moore contends in his third issue that the court abused its discretion by refusing to permit him to impeach Hauerland with the prior theft [2] convictions. He contends in his first issue that the court abused its discretion by refusing to permit him to ask witnesses called to vouch for Hauerland's truthful character whether they were aware of the three prior convictions.

#### IMPEACHMENT WITH CONVICTIONS MORE THAN TEN YEARS' OLD

■ Because the convictions were more than ten years' old, they were admissible for impeachment purposes only if their probative value substantially outweighed their prejudicial effect. TEX.R. EVID. 609(b). The Court of Criminal Appeals has looked to federal cases to determine what factors should be considered in balancing probative value against prejudicial effect when the witness sought to be impeached is the defendant. *Theus v. State*, 845 S.W.2d 874, 880 (Tex.Crim.App.1992) (citing *U.S. v. Mahone*, 537 F.2d 922, 929 (7th Cir.1976)).

■ Those factors include: (1) the impeachment value of the prior crime, (2) the temporal proximity of the prior crime relative to the charged offense and the witness's subsequent history, (3) the similarity between the past crime and the offense being prosecuted, (4) the importance of the

---

**2.** Although Moore acknowledges the prior DWI conviction in connection with his third issue, he argues only that he "should have been allowed to cross-examine [Hauerland] regarding his theft convictions."

defendant's testimony, and (5) the importance of the credibility issue. *Id.*

With the exception of the second and third factors, these factors can be applied in the same manner when the witness sought to be impeached is someone other than the defendant. We look to the federal authorities to see how the second and third factors are treated in such a case. *Cf. id.*

The second factor is modified only slightly by the federal cases. That factor examines the temporal proximity of the prior conviction to the date the witness testifies and the witness's subsequent history. *See Daniels v. Loizzo,* 986 F.Supp. 245, 252 (S.D.N.Y.1997); *THK Am., Inc. v. NSK, Ltd.,* 917 F.Supp. 563, 570 (N.D.Ill. 1996); Jack B. Weinstein & Margaret A Berger, *Weinstein's Federal Evidence* vol. 4, ¶ 609.05[2], 609–33 (Joseph M. McLaughlin, ed., 2d ed., LEXIS 2001).

The third factor as modified examines the similarity between the past crime and any conduct of the witness at issue in the present trial. *See THK Am.,* 917 F.Supp. at 570; Weinstein & Berger, *Weinstein's Federal Evidence* vol. 4 at ¶ 609.05[2], 609– 33.

Applying these factors to Moore's case, the prior theft convictions do have strong impeachment value. The fact that Hauerland has had no further difficulties with the law weigh against their admission. The third factor focuses on the potential for unfair prejudice due to similarity of past conduct with the conduct at issue in the present litigation. The absence of similarities between Hauerland's theft convictions and his conduct on the occasion in question indicates no significant danger of unfair prejudice on this basis. Hauerland's testimony was important to the State's case but not essential because other witnesses corroborated much of his testimony. For the same reason, Hauer-

land's credibility was important but not a critical issue at trial due to the presence of other witnesses who provided similar testimony.

Accordingly, two of these factors indicate that Hauerland prior theft convictions have probative value, but the other three tend to diminish the probative value of the convictions. Therefore, it cannot be said that the probative value of the convictions substantially outweighs the danger of unfair prejudice. For this reason, we conclude that the court did not abuse its discretion by refusing to permit Moore to impeach Hauerland with the prior convictions. Thus, we overrule Moore's third issue.

### Cross-Examination of Character Witnesses

In rebuttal, the State called three character witnesses who testified that in their opinion Hauerland had a good reputation for truthfulness. Moore sought to ask these witnesses whether they had heard that Hauerland had the two prior theft convictions and the prior DWI conviction at issue. The State objected that probative value of this line of questioning was substantially outweighed by danger of unfair prejudice, confusion of issues, and misleading the jury under Rule 403. We agree with the State on this issue.

We review decisions to admit or exclude evidence under an abuse-of-discretion standard. *Torres v. State,* 71 S.W.3d 758, 760 (Tex.Crim.App.2002). We will not reverse a ruling which lies within "the zone of reasonable disagreement." *Id.*

 A witness who testifies to another's good character may be cross-examined to test the witness's awareness of relevant specific instances of conduct. Tex.R. Evid. 405(a); *Wilson v. State,* 71 S.W.3d 346, 350 (Tex.Crim.App.2002).

This right of cross-examination has two limitations: (1) the prior instances must be relevant to a character trait at issue; and (2) the prior instances must have a basis in fact. *Wilson*, 71 S.W.3d at 350. We agree with the State's contention that this right of cross-examination is also limited by Rule 403. *See Mozon v. State*, 991 S.W.2d 841, 846 (Tex.Crim.App.1999) (evidence admissible under Rule 404 may still be excluded under Rule 403); *see also McCoy v. State*, 10 S.W.3d 50, 53 (Tex.App.-Amarillo 1999, no pet.) ("Rule 405 merely delineates the manner by which admissible character or character trait evidence may be proven.").

It is undisputed that Moore established a factual basis for the prior convictions. Thus, we limit our analysis to the issue of whether the prior convictions are relevant to Hauerland's truthful character and if so whether the probative value of the convictions is substantially outweighed by the danger of unfair prejudice or one of the other considerations enumerated in Rule 403.

■ The prior DWI conviction is not relevant to Hauerland's truthful character because it is not a conviction for a crime involving moral turpitude. *See Shipman v. State*, 604 S.W.2d 182, 184 (Tex.Crim. App. [Panel Op.] 1980); *Lopez v. State*, 990 S.W.2d 770, 778 (Tex.App.-Austin 1999, no pet.); *see also Perez v. State*, 11 S.W.3d 218, 221 (Tex.Crim.App.2000) (felony DWI not a "high crime" under art. XVI, § 2 of Tex. Const. because it does not involve "moral corruption" or "dishonesty"). Thus, the court did not abuse its discretion by refusing to permit Moore to cross-examine the State's character witnesses about the DWI conviction.

■ Conversely, the theft convictions are relevant to Hauerland's truthful character because they are convictions for crimes involving moral turpitude. *Bowden*

*v. State*, 628 S.W.2d 782, 788 (Tex.Crim. App.1982); *Morris v. State*, 67 S.W.3d 257, 263 (Tex.App.-Houston [1st Dist.] 2001, pet. ref'd). However, evidence of those convictions may be excluded if their probative value is substantially outweighed by the danger of unfair prejudice. *See Mozon*, 991 S.W.2d at 846; Tex.R. Evid. 403.

■ In conducting a Rule 403 analysis, we examine: (1) how compellingly the challenged evidence serves to make a fact of consequence more or less probable; (2) the potential the challenged evidence has to impress the jury "in some irrational but nevertheless indelible way"; (3) the time the proponent will need to develop the evidence; and (4) the force of the proponent's need for the evidence, *i.e.*, does the proponent have other probative evidence available to him to help establish the fact of consequence. *Manning v. State*, 114 S.W.3d 922, 926 (Tex.Crim.App.2003); *Mozon*, 991 S.W.2d at 847.

The fact of consequence at issue here is Hauerland's character for truthfulness. Because the theft convictions are more than ten years' old, they do not compellingly establish that his truthful character is bad. *Cf.* Tex.R. Evid. 609(b); *see also Theus*, 845 S.W.2d at 881 (prior conviction more probative as impeachment evidence "if the past crime is recent and if the witness has demonstrated a propensity for running afoul of the law").

The remoteness of the prior convictions also tends to diminish any potential they may have for impressing the jury in some improper manner. Moore would require very little time to question the witnesses about their familiarity with Hauerland's prior theft convictions. Moore called other witnesses who testified that Hauerland's character for truthfulness was not good. Thus, his need to cross-examine the State's

witnesses regarding Hauerland's prior convictions was lessened.

Because these factors weigh equally in favor of and against permitting cross-examination regarding the prior convictions and because Rule 609(b) authorized the exclusion of the convictions for impeachment of Hauerland while he was on the stand, we cannot say that the court abused its discretion by refusing to allow the cross-examination. Accordingly, we overrule Moore's first issue.

## MOORE'S CHARACTER WITNESSES

■ Moore contends in his second issue that the court abused its discretion by refusing to permit him to present witnesses to testify about his character for truthfulness. Because the State did not attack Moore's character for truthfulness, no abuse of discretion is shown.

Rule 608(a)(2) provides that evidence of a witness's truthful character is admissible if the witness's truthful character has been attacked. Moore contends that his truthful character was attacked by the State's "vigorous" cross-examination.

■ Unless the State's cross-examination of a defendant directly implicates the defendant's character for truthfulness, cross-examination exposing inconsistencies between the defendant's testimony and the State's evidence does not constitute an attack on the defendant's truthful character under Rule 608(a)(2). *Stitt v. State*, 102 S.W.3d 845, 848–49 (Tex.App.-Texarkana 2003, pet. ref'd); *Spector v. State*, 746 S.W.2d 946, 950–51 (Tex.App.-Austin 1988, pet. ref'd).

Here, the State's cross-examination did nothing more than illuminate the inconsistencies between Moore's version of the events and the State's. This does not constitute an attack on Moore's character for truthfulness. *Id.* Thus, no abuse of discretion is shown. Accordingly, we overrule Moore's second issue.

## REQUESTED JURY INSTRUCTIONS

Moore contends in his fifth issue that the court erred by overruling his requested jury instructions on the duty to report child abuse or neglect and the confidentiality of information obtained in the course of an investigation of suspected abuse or neglect. He contends in his eighth issue that the court erred by refusing to charge the jury on assault by threat as a lesser-included offense of retaliation.

### DUTY TO REPORT ABUSE OR NEGLECT AND CONFIDENTIALITY OF INFORMATION

■ The trial court denied Moore's request to instruct the jury regarding the duty to report suspected child abuse or neglect [3] and the confidentiality of information obtained in an investigation of suspected abuse or neglect as provided by statute.[4] It appears that Moore sought these instructions to support his contention that Hauerland could not lawfully require Karen to release her counseling records to him and thus was not acting as a public servant on the occasion in question. Because the requested instructions served only to negate the public servant element of the retaliation charge, the trial court was not required to submit them.

■ "[A] defensive instruction is not required when the issue in question is not a statutorily-enumerated defense and merely serves to negate elements of the State's case." *Ortiz v. State*, 93 S.W.3d 79, 92 (Tex.Crim.App.2002), *cert. denied*, 538 U.S. 998, 123 S.Ct. 1901, 155 L.Ed.2d 824

---

3. *See* TEX. FAM.CODE ANN. §§ 261.101–261.104 (Vernon 2002).

4. *Id.* § 261.201 (Vernon Supp.2004).

(2003). The requested instructions do not implicate statutory defenses or affirmative defenses. Rather, they would serve only to negate the public servant element of the offense of retaliation. Thus, the trial court did not err in refusing the instructions. Accordingly, we overrule Moore's fifth issue.

### INSTRUCTION ON LESSER-INCLUDED OFFENSE

The trial court likewise denied Moore's request for an instruction on assault by threat as a lesser-included offense of retaliation. An offense is a lesser-included offense if:

> (1) it is established by proof of the same or less than all the facts required to establish the commission of the offense charged;

> (2) it differs from the offense charged only in the respect that a less serious injury or risk of injury to the same person, property, or public interest suffices to establish its commission;

> (3) it differs from the offense charged only in the respect that a less culpable mental state suffices to establish its commission; or

> (4) it consists of an attempt to commit the offense charged or an otherwise included offense.

TEX.CODE CRIM. PROC. ANN. art. 37.09 (Vernon 1981).

Assault by threat is not a lesser-included offense of retaliation under article 37.09(1) because assault by threat requires a threat intended to place the victim in fear of imminent harm, whereas retaliation does not require a threat of imminent harm. *Helleson v. State*, 5 S.W.3d 393, 396 (Tex.App.-Fort Worth 1999, pet. ref'd).

Moore contends that assault by threat is a lesser-included offense under article 37.09(2) because, without the allegation that Hauerland was a public servant, which Moore disputes, the resulting conduct poses "a less serious threat to the same person." We reject this contention on its face. The issue of whether Hauerland was acting as a public servant on the occasion in question has no effect on the seriousness of the threat Moore made to him. Stated another way, the threat was the same regardless of Hauerland's status. Accordingly, we overrule Moore's eighth issue.

### FAILURE TO DISCLOSE *BRADY*[5] EVIDENCE

Moore contends in his ninth issue that the trial court abused its discretion by denying his motion for mistrial due to the State's failure to disclose before trial that one of its witnesses had been indicted for burglary in 1991. The State responds that Moore did not preserve this contention for appellate review because he failed to request a continuance when the evidence first came to light at trial. Because preservation "is a systemic requirement that a first-level appellate court should ordinarily review on its own motion," we will begin with the State's contention that Moore did not preserve this issue for our review. *See Jones v. State*, 942 S.W.2d 1, 2 n. 1 (Tex. Crim.App.1997).

A plurality of this Court has suggested that "*Brady* claims should fall under *Marin's*[6] category one and need not be 'preserved' for appellate review." *Keeter v. State*, 105 S.W.3d 137, 144 (Tex.App.-Waco 2003, pet. granted) (plurality) (footnote added). On further consideration, we conclude that a defendant's right to the disclosure of exculpatory evidence under *Brady*

---

**5.** *Brady v. Md.*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

**6.** *Marin v. State*, 851 S.W.2d 275 (Tex.Crim. App.1993).

is a category two right in the *Marin* formulation because this right can be waived but must be implemented even if not requested.

In *Marin*, the Court of Criminal Appeals identified three categories of rights possessed by criminal defendants: (1) absolute requirements and prohibitions which cannot be waived or forfeited; (2) rights which must be implemented unless expressly waived; and (3) rights which will be implemented only upon request. 851 S.W.2d 275, 279–80 (Tex.Crim.App.1993); *accord Sanchez v. State*, 120 S.W.3d 359, 366 (Tex.Crim.App.2003). Only rights in the third category must be "preserved" for appellate review. *Marin*, 851 S.W.2d at 279; *accord Sanchez*, 120 S.W.3d at 366–67.

The Supreme Court of the United States has held that a defendant who pleads guilty can waive his right to *Brady* evidence. *See U.S. v. Ruiz*, 536 U.S. 622, 628–33, 122 S.Ct. 2450, 153 L.Ed.2d 586 (2002). Thus, a defendant's rights under *Brady* are "waivable." However, that Court has also held that *Brady* evidence must be provided to the defense, even if not requested. *Strickler v. Greene*, 527 U.S. 263, 280, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999); *U.S. v. Agurs*, 427 U.S. 97, 103–07, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976). Given these two components of the Supreme Court's *Brady* jurisprudence, we conclude that a defendant's right to exculpatory evidence under *Brady* is a category two right in the *Marin* formulation. Therefore, a *Brady* claim need not be preserved for appellate review. *Marin*, 851 S.W.2d at 279; *accord Sanchez*, 120 S.W.3d at 366–67.

True, Texas courts, including this one, have previously held *Brady* claims procedurally defaulted because of the defendants' failure to request a continuance. *E.g.*, *Wilson v. State*, 7 S.W.3d 136, 146 (Tex.Crim.App.1999); *Taylor v. State*, 93 S.W.3d 487, 502 (Tex.App.-Texarkana 2002, pet. ref'd); *Yates v. State*, 941 S.W.2d 357, 364 (Tex.App.-Waco 1997, pet. ref'd). However, it does not appear that any of these decisions considered this issue under *Marin*. When we examine the Supreme Court's *Brady* jurisprudence in light of the preservation requirements established by *Marin* (which have been recently reaffirmed by the Court of Criminal Appeals), we must conclude as stated that a defendant's rights under *Brady* fall within category two under *Marin*. Accordingly, we review the merits of Moore's *Brady* claim.

 A *Brady* violation occurs when the State fails to disclose exculpatory information "unknown to the defense." *Hayes v. State*, 85 S.W.3d 809, 815 (Tex. Crim.App.2002) (quoting *Agurs*, 427 U.S. at 103, 96 S.Ct. 2392). Here, Moore's counsel informed the trial court that he had discovered by his own investigation that the witness in question had been previously indicted. Because Moore was aware of the information which he contends the State improperly failed to disclose, no *Brady* violation is shown. *Id.* Accordingly, we overrule Moore's ninth issue.

We affirm the judgment.

Chief Justice GRAY concurring and dissenting.

TOM GRAY, Chief Justice, concurring and dissenting to order granting motion for rehearing.

Finding nothing in the motion for rehearing that causes me to change my analysis, I would deny the motion for rehearing in its entirety. Finding nothing wrong with the Court's original analysis that affirmed the judgment, as does the majority's new analysis, I will adopt the Court's

original analysis as my concurring opinion. No further analysis is necessary. I pause only to note that the majority's decision to place all *Brady* violations in the type two category of violations under *Marin* flies in the face of Texas Court of Criminal Appeals precedent. *See Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963); *Marin v. State,* 851 S.W.2d 275 (Tex.Crim.App.1993). *See* discovery violation discussed below. The majority fails to distinguish *Brady* violations that become apparent during trial from those that are not discovered until after trial.

What follows is the original text of our analysis, with slight modifications when necessary to reflect that it is now a concurring opinion.

Kerry Eugene Moore became involved in a dispute with Johnnie Hauerland, superintendent of the Venus Independent School District, over the final paycheck of Moore's wife, a former employee of Venus ISD. By a two-count indictment, Moore was charged with felony assault on a public servant and retaliation. *See* TEX. PENAL CODE ANN. § 22.01(a), (b)(1) (Vernon 2003); *id.* § 36.06(a) (Vernon 2003). A jury found Moore not guilty of assault, and guilty of retaliation. The jury assessed his punishment at three years' imprisonment and a fine of ten thousand dollars, and recommended that the imprisonment and fine be probated.

Moore presents nine issues, several of which present multiple questions: (1) the limitation of his cross-examination of the State's witnesses as to Hauerland's character, (2) the exclusion of his character witnesses, (3) the denial of impeachment of Hauerland by his prior convictions, (4) the denial of his motion to quash the indictment, (5) the denial of his requested jury instructions on the duty to report child abuse and the confidentiality of counseling records, (6) the legal and factual sufficien-cy of the evidence, (7) the denial of his request that the State elect between the two counts of the indictment, (8) the denial of his requested instruction on simple assault, and (9) the denial of his motion for mistrial for discovery violations. We affirm.

## SUFFICIENCY OF THE EVIDENCE

In his sixth issue, Moore contends that the evidence of retaliation was legally and factually insufficient. In particular, Moore complains that the evidence was insufficient that he threatened to harm Hauerland, that he intended to retaliate against Hauerland, and that Hauerland was a public servant. The evidence was legally and factually sufficient.

### Standard of Review

A "legal sufficiency of the evidence review does not involve any weighing of favorable and non-favorable evidence." *Margraves v. State,* 34 S.W.3d 912, 917 (Tex.Crim.App.2000) (citing *Cardenas v. State,* 30 S.W.3d 384 (Tex.Crim.App.2000)). Instead, a legal sufficiency review calls upon the reviewing court to view the evidence in the light most favorable to the verdict and determine whether *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Id.; see also Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Mason v. State,* 905 S.W.2d 570, 574 (Tex.Crim.App.1995).

In reviewing a challenge to the factual sufficiency of the evidence, we begin with the assumption that the evidence is legally sufficient. *See Santellan v. State,* 939 S.W.2d 155, 164 (Tex.Crim.App.1997). We must view all the evidence without the prism of the "in the light most favorable to the prosecution" construct. *See Clewis v. State,* 922 S.W.2d 126, 129 (Tex.Crim.App. 1996). We ask "whether a neutral review of all the evidence, both for and against

the finding, demonstrates that the proof of guilt is so obviously weak as to undermine confidence in the jury's determination, or the proof of guilt, although adequate if taken alone, is greatly outweighed by contrary proof." *Johnson v. State,* 23 S.W.3d 1, 11 (Tex.Crim.App.2000); *see also Goodman v. State,* 66 S.W.3d 283, 285 (Tex. Crim.App.2001).

We must also remain cognizant of the factfinder's role and unique position-one that the reviewing court is unable to occupy. *Johnson,* 23 S.W.3d at 9. The jury determines the credibility of the witnesses and may "believe all, some, or none of the testimony." *Chambers v. State,* 805 S.W.2d 459, 461 (Tex.Crim.App.1991). It is the jury that accepts or rejects reasonably equal competing theories of a case. *Goodman,* 66 S.W.3d at 287. A decision is not manifestly unjust as to the accused merely because the factfinder resolved conflicting views of evidence in favor of the State. *Cain v. State,* 958 S.W.2d 404, 410 (Tex.Crim.App.1997).

*Penal Code: The Offense*

The Texas Penal Code creates the offense of obstruction or retaliation as follows:

A person commits an offense if he intentionally or knowingly harms or threatens to harm another by an unlawful act:

(1) in retaliation for or on account of the service or status of another as a:

(A) public servant, witness, prospective witness, or informant; or

(B) person who has reported or who the actor knows intends to report the occurrence of a crime; or

(2) to prevent or delay the services of another as a:

(A) public servant, witness, prospective witness, or informant; or

(B) person who has reported or who the actor knows intends to report the occurrence of a crime.

Tex. Penal Code Ann. § 36.06(a).

The Penal Code, in turn, defines "public servant" as follows, in relevant part:

a person elected, selected, appointed, employed, or otherwise designated as one of the following, even if he has not yet qualified for office or assumed his duties:

(A) an officer, employee, or agent of government; or

. . . .

(F) a person who is performing a governmental function under a claim of right although he is not legally qualified to do so.

Tex. Penal Code Ann. § 1.07(a)(41) (Vernon 2003).

The indictment alleged retaliation in the following terms:

Kerry Eugene Moore ... did ... intentionally or knowingly threaten to harm another, to-wit: J. Haverland, a public servant, by an unlawful act in retaliation for or on account of the services or status of the said J. Haverland as a public servant, to-wit: superintendent of the Venus Independent School District, Venus, Texas, said unlawful act being to harm J. Haverland, and said threat was communicated to J. Haverland in person. . . .

The trial court abstractly instructed the jury as follows, in part:

Our law provides that a person commits the offense of Retaliation if the person intentionally or knowingly threatens to harm another by an unlawful act in retaliation for or on account of the service of a person as a public servant.

The term "public servant" means a person elected, selected, appointed, em-

ployed, or otherwise designated as an officer, employee, or agent of government.

You are instructed that J. Haverland is a public servant.

You are instructed that the superintendent of a public school district acts within the lawful discharge of his official duties, so long as he is acting within the capacity as superintendent.

You are instructed that the administration of financial matters involving a school district is within the capacity and official duties of the superintendent of said district.

The trial court's application paragraph tracked the language of the indictment.

*Evidence*

The evidence was as follows. Before her resignation, Moore's wife, Karen, had been employed as a counselor by the Venus ISD. At the time of Karen Moore's resignation, there was a dispute over a new policy that teachers report suspected child abuse to school officials before reporting it, as required by statute, to the appropriate law enforcement or other agency. *See* TEX. FAM.CODE ANN. §§ 261.101, 261.103 (Vernon 2002). When she resigned, Karen Moore retained confidential student records that she had maintained in the course of her employment. Relying on a provision of Venus ISD's standard employment contract, Hauerland withheld Karen Moore's final paycheck until she returned or accounted for the files. Venus ISD and the Moores consulted attorneys, who exchanged correspondence regarding the dispute.

On the date of the incident, Kerry Moore went to the Venus ISD offices to try to get his wife's check. The payroll director told Moore that Moore would have to speak with Hauerland. Hauerland was then employed as the superintendent of Venus ISD. As chief operating officer reporting to the school board, the superintendent had the job of overseeing personnel.

Moore demanded the check and, by the testimony of Hauerland and other witnesses, said that he would have the check from Hauerland or would "kick Hauerland's butt." By the testimony of the State's witnesses, Moore poked Hauerland in the chest, grabbed him by his clothes, and threw him against a wall and onto the ground. Moore testified that he only either gestured at Hauerland or lightly touched him. Moore denied threatening Hauerland, but did testify that he accused Hauerland of misusing his authority in order to harm Moore's wife. Thereafter, in any case, Moore and Hauerland ended up on the ground with Moore on top, with his fist drawn back to strike Hauerland. At this point, office workers summoned a school maintenance man and others to come to Hauerland's aid, and called the Venus Police Department.

Moore testified that he realized that what he was doing was wrong, relented, and left voluntarily. The State's witnesses, however, testified that Moore had to be pulled off of Hauerland, and physically escorted off of school property. The State's witnesses testified that as Moore was being escorted away, he said that after he made bail he would come back to "get" Hauerland, and they took this as a threat to kill or harm him. Moore denied saying this; Moore testified that he had said only that he would get satisfaction by legal means.

Each side called attorneys who testified as to whether Venus ISD could legally withhold the check. The Moores' civil attorney testified that the withholding of the check was an illegal garnishment under a void contract; an attorney for Venus ISD testified that the withholding was the legal

enforcement of a valid contractual provision.

*Legal Sufficiency: Application*

First, Moore challenges the legal sufficiency of the evidence that he threatened to harm Hauerland. State's witnesses testified that Moore threatened to "kick Hauerland's butt" if Hauerland did not give him the check, and threatened to "get" Hauerland. Those witnesses testified that they understood those statements as threats to harm Hauerland.

Next, Moore challenges the legal sufficiency of the evidence that he intended to retaliate against Hauerland. Moore testified that he told Hauerland that he was wrong to use his authority to withhold the check to harm the Moores. Moore threatened to harm Hauerland if he did not give Moore the check, and threatened to harm Hauerland after he refused to give Moore the check.

Lastly, Moore challenges the legal sufficiency of the evidence that Hauerland was a public servant. In particular, Moore argues that Hauerland was not acting as a public servant in withholding the check. At the time of the incident, Hauerland was employed as superintendent of Venus ISD, was at work in his office in the Venus ISD administrative building, and was performing his duty of supervising personnel, both when he ordered the check withheld and when he came to respond to Moore's inquiry about the check.

As to each of Moore's challenges to the legal sufficiency of the evidence, viewing the evidence in the light most favorable to the State, a rational factfinder could have found beyond a reasonable doubt the element that Moore challenges. Thus, the evidence was legally sufficient.

*Factual Sufficiency: Application*

Moore also argues that the evidence was factually too weak to support the verdict. First, Moore challenges the factual sufficiency of the evidence that he threatened to harm Hauerland. Contrary to the testimony of several witnesses that Moore threatened to "kick Hauerland's butt" and to "get" Hauerland, and thus to harm Hauerland, Moore points only to his testimony denying that he made those statements.

Next, Moore challenges the factual sufficiency of the evidence that he intended to retaliate against Hauerland. Contrary to the testimony of several witnesses that Moore threatened to harm Hauerland if he did not give Moore the check, and again threatened to harm Hauerland after he refused to give Moore the check, Moore points only to his testimony denying that he made those statements.

Lastly, Moore challenges the factual sufficiency of the evidence that Hauerland was acting as a public servant. Hauerland testified that he was employed as school superintendent, was in his office performing his duties when he was approached by Moore, and was enforcing a valid contractual provision that allowed him to withhold the check. An attorney also testified that the contractual provision was valid. Another attorney and a teachers organization representative testified that the provision was void and unenforceable.

On none of the elements challenged by Moore was the evidence so factually weak as to undermine confidence in the verdict. Moore does not argue that the proof of those elements is outweighed by contrary proof. Thus, I would overrule Moore's sixth issue.

## IMPEACHMENT OF THE STATE'S CHARACTER WITNESSES

In his first issue, Moore contends that the trial court erred in sustaining the State's objection to Moore's attempted

cross-examination of the State's character witnesses. To the extent that Moore preserves his complaint on appeal, the trial court's error was harmless.

In rebuttal, the State called three character witnesses who testified that in their opinion Hauerland had a good reputation for truthfulness: Joe Russell, a Venus ISD school board member; Delinda Cervantez, a Venus ISD employee; and Brian Blackwell, a Venus ISD middle-school principal. For each of these witnesses, Moore made an offer of proof of the evidence that he sought to introduce through the witness in question-and-answer form. *See* Tex.R. Evid. 103(a)(2). Russell testified outside the presence of the jury that he was aware that Hauerland had committed one shoplifting offense; Blackwell testified that he was aware that Hauerland had twice been convicted of theft; and Cervantez testified that she had heard that Hauerland had twice been convicted of theft. As to Russell, the State objected generally to improper impeachment. As to all of these witnesses, the State objected that the danger of unfair prejudice of evidence of these convictions substantially outweighed their probative value for impeachment. *See* Tex.R. Evid. 403. The trial court sustained the objections.

Moore preserved his complaint at trial as to each witness, by making an offer of proof of the excluded evidence. *See* Tex. R.App. P. 33.1(a); Tex.R. Evid. 103(a)(2); *Warner v. State,* 969 S.W.2d 1, 2 (Tex. Crim.App.1998) (per curiam); *see also Alonzo v. State,* 67 S.W.3d 346, 355 (Tex. App.-Waco 2001, pet. granted on other grounds).

However, Moore forfeits his complaint in part on appeal. An appellant who presents an issue on appeal other than that presented in the trial court forfeits the issue on appeal. Tex.R.App. P. 33.1; *Turner v. State,* 87 S.W.3d 111, 117 (Tex.Crim.

App.2002), *cert. denied,* 538 U.S. 965, 123 S.Ct. 1760, 155 L.Ed.2d 519 (2003); *Montoya v. State,* 43 S.W.3d 568, 571 (Tex. App.-Waco 2001, no pet.). The trial court ruled that Moore's attempted means of impeachment was improper only as to Russell. As to Cervantez and Blackwell, the court ruled only that the danger of unfair prejudice of evidence of Hauerland's shoplifting citations substantially outweighed the evidence's impeachment value. Moore does not argue that the court erred in its Rule 403 analysis. Thus, the only ruling of the trial court of which Moore complains on appeal that comports with his trial objection is that the impeachment of Russell as to his knowledge of Moore's shoplifting citations was by an improper means.

In this regard, the trial court erred. A character witness is subject to proper cross-examination on the basis of the witness's knowledge of the character of the person about whom the witness is testifying. Any witness is subject to impeachment. Tex.R. Evid. 607. One means of impeachment is to undermine the basis of the witness's knowledge of the subject of the testimony. A character witness, thus, who testifies to a person's good character, is subject to cross-examination on specific instances of conduct by the person that would be inconsistent with a good character. Tex.R. Evid. 405(a); *Wilson v. State,* 71 S.W.3d 346, 350 (Tex.Crim.App.2002); *Murphy v. State,* 4 S.W.3d 926, 930 (Tex. App.-Waco 1999, pet. ref'd). In general, a witness who testifies as to his or her opinion of a person's character is subject to cross-examination by questions of the form "do you know"; that is, questions asking whether the character witness's knowledge of the person's character includes knowledge of specific bad acts committed by the person. *Wilson* at 350; *see Murphy* at 932.

There are at least two limitations on the impeachment of an opinion character witness by specific instances of conduct. "First, the incidents inquired about must be relevant to the character traits at issue. Second, the alleged bad act must have a basis in fact." *Wilson* at 351 (internal citation omitted); *accord Murphy* at 930–31.

Moore properly sought to impeach Russell with his knowledge of Hauerland's theft convictions in accordance with the Rules of Evidence. Hauerland's bad acts that Moore wanted to use to impeach Russell's knowledge of Hauerland's character had a basis in fact, since Hauerland admitted to the theft convictions. Those convictions were relevant to Hauerland's character for truthfulness; theft is among the most damning crimes of deception. Thus, the trial court erred in sustaining the State's objection to improper impeachment.

The error, however, is harmless. Improper limitations on cross-examination violate the confrontation clauses of the United States and Texas Constitutions, and thus implicate the constitutional standard for harmless error review. *See* U.S. CONST. amend. VI; TEX. CONST. art. I, § 10; TEX.R.APP. P. 44.2(a); *Lopez v. State*, 18 S.W.3d 220, 222 (Tex.Crim.App.2000). Under that standard, if a court of appeals finds "constitutional error that is subject to harmless error review, the court of appeals must reverse a judgment of conviction ... unless the court determines beyond a reasonable doubt that the error did not contribute to the conviction." TEX. R.APP. P. 44.2(a). A confrontation clause violation is subject to harmless error analysis. *Delaware v. Van Arsdall*, 475 U.S. 673, 684, 106 S.Ct. 1431, 1438, 89 L.Ed.2d 674 (1986); *Young v. State*, 891 S.W.2d 945, 948 (Tex.Crim.App.1994); *see Shilling*

*v. State*, 60 S.W.3d 280, 283 (Tex.App.-Waco 2001, pet. ref'd).

In analyzing harm from the erroneous exclusion of defense cross-examination of a State's witness, a court begins with the assumption that "the damaging potential of the cross examination w[as] fully realized." *Van Arsdall*, 475 U.S. at 684, 106 S.Ct. at 1438; *Young* at 948. The court then considers the following factors:

(1) the importance of the witness's testimony in the prosecution's case,

(2) whether the testimony was cumulative,

(3) the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points,

(4) the extent of cross-examination otherwise permitted, and

(5) the overall strength of the prosecution's case.

*Id.* Under this assumption and in light of these factors, the court must determine whether the error was harmless beyond a reasonable doubt. *Id.*; TEX.R.APP. P. 44.2(a).

Thus, we assume that, had Russell testified before the jury as he had outside its presence, he would have testified that he knew about one of Hauerland's shoplifting citations and did not know about the other. However, three defense witnesses testified that Hauerland had a poor character for truthfulness, and Moore further impeached Hauerland with a prior inconsistent statement. Two witnesses other than Russell testified as to Hauerland's good character for truthfulness. Moreover, Hauerland's testimony regarding the elements of the offense was corroborated by several other witnesses, and was contradicted only by Moore's bald denials. The trial court otherwise generally allowed free cross-examination. Lastly, the overall strength of the

State's well-corroborated evidence was overwhelming. In light of these factors, the trial court's error in excluding the evidence was harmless beyond a reasonable doubt. I would overrule Moore's first issue.

## LIMITATION OF MOORE'S CHARACTER WITNESSES

In his second issue, Moore contends that the trial court erred in sustaining the State's objections to Moore's offer of evidence of his good character for being truthful, and his offer of opinion evidence of his good character for being peaceful and law-abiding. If the trial court erred, the error was harmless.

Before Moore's attorney began to present his case, he informed the court that he intended to call character witnesses for Moore's good character for being peaceful, law-abiding, and truthful. The State objected that Moore's character for peacefulness was not at issue, and that Moore's credibility had not yet been impeached. The court limited the testimony of Moore's character witnesses to reputation evidence of Moore's character.

Moore called his pastor, who testified on direct examination that Moore's reputation for being peaceful and law-abiding was good. Moore testified in his main case, and the State cross-examined him. Thereafter, Moore's attorney again offered evidence of Moore's character for truthfulness. The State objected that this was improper bolstering. The trial court again limited the evidence to reputation evidence of Moore's character for being peaceful and law-abiding.

Thereafter, Moore called a friend, who testified that Moore's reputation for being peaceful and law-abiding was good.

Moore preserved his complaints at trial, since the substance of the testimony that

he sought to offer was apparent from the context. TEX.R.APP. P. 33.1(a); TEX.R. EVID. 103(a)(2).

## Evidence of Truthful Character

The Texas Rules of Evidence provide for the impeachment and rehabilitation of a witness's credibility:

> The credibility of a witness may be attacked or supported by evidence in the form of opinion or reputation, but subject to these limitations:
>
> (1) the evidence may refer only to character for truthfulness or untruthfulness; and
>
> (2) evidence of truthful character is admissible only after the character of the witness for truthfulness has been attacked by opinion or reputation evidence or otherwise.

TEX.R. EVID. 608(a).

Moore argues that the State's cross-examination of him impeached his credibility by attacking his character for truthfulness. "Vigorous cross-examination" can, in principle, effectively impeach a witness's credibility. *See Duckett v. State,* 797 S.W.2d 906, 918–19 (Tex.Crim.App.1990), *overruled on other grounds, Cohn v. State,* 849 S.W.2d 817, 819 (Tex.Crim.App.1993). However, before character evidence of truthfulness is admissible to rehabilitate an impeached witness's credibility, the method of impeachment must have attacked the witness's *character* for truthfulness, not just the witness's testimony. 1 STEVEN GOODE ET AL., TEXAS PRACTICE: GUIDE TO THE TEXAS RULES OF EVIDENCE § 608.2 (3d ed.2002). Reputation or opinion testimony as to the witness's character for untruthfulness impeaches the witness for purposes of Rule 608(a); merely contradicting the witness's testimony by cross-examination or otherwise generally does not. *Stitt v. State,* 102 S.W.3d 845, 848 (Tex.App.-Texarkana 2003, pet. ref'd);

*Spector v. State,* 746 S.W.2d 946, 951 (Tex. App.-Austin 1988, pet. ref'd).

The cross-examination of Moore was unexceptional, and not particularly vigorous. Moreover, while the State pointed out contradictions within Moore's testimony and between Moore's testimony and that of other witnesses, the State did not directly attack Moore's character for truthfulness. Thus, the trial court did not abuse its discretion in excluding evidence of Moore's character for truthfulness.

### Opinion Evidence of Peaceful and Law-Abiding Character

If the trial court erred in excluding opinion evidence of Moore's character for being peaceful and law-abiding, the error was harmless.

The Rules of Evidence provide for an exception to the general prohibition against character conformity evidence for "[e]vidence of a pertinent character trait offered ... by an accused in a criminal case, or by the prosecution to rebut the same." Tex.R. Evid. 404(a)(1). In a prosecution for a crime of violence, the defendant's character for being peaceful is pertinent, since evidence of peaceful character makes it less likely that the defendant committed the crime. For example, "[i]n a murder case, the accused's reputation for peacefulness, or non-aggressive behavior, is the appropriate inquiry." *Wheeler v. State,* 67 S.W.3d 879, 882 n. 2 (Tex.Crim. App.2002) (quoting *Valdez v. State,* 2 S.W.3d 518, 520 (Tex.App.-Houston [14th Dist.] 1999, pet. ref'd)).

The Rules of Evidence also generally provide that when character evidence is admissible, it may only be proved on direct examination "by testimony as to reputation or by testimony in the form of an opinion." Tex.R. Evid. 405(a). Under the Rules, moreover, the rigid common-law distinction between opinion and reputation evidence has been relaxed. *See Murphy v.*

*State,* 4 S.W.3d 926, 932–33 (Tex.App.-Waco 1999, pet. ref'd); 1 Goode, Guide to the Texas Rules of Evidence § 405.2.2, at 266–67.

Although the trial court did not permit Moore to present opinion evidence of his character for being peaceful and law-abiding, the court did permit reputation evidence. Moore does not suggest how opinion evidence would have been preferable to reputation evidence, and we do not see how it would be. Indeed, even under the common law, opinion evidence was considered inferior to reputation evidence. 1 Goode § 405.2.2. Thus, Moore's "substantial rights" were not affected by the limitation of evidence of Moore's peaceful character to reputation evidence. *See* Tex. R.App. P. 44.2(b).

I would overrule Moore's second issue.

### IMPEACHMENT OF HAUERLAND BY PRIOR CONVICTIONS

In his third issue, Moore contends that the trial court erred in sustaining the State's objection to the impeachment of Hauerland by evidence of prior convictions. The trial court did not abuse its discretion in sustaining the objection to evidence of remote convictions.

Before Hauerland testified on direct examination, Moore laid the predicate for impeaching Hauerland by evidence of his prior convictions for theft. *See* Tex. Penal Code Ann. § 31.03(a) (Vernon 2003). On cross-examination by Moore outside the presence of the jury, Hauerland testified that he had been arrested for shoplifting in 1987 and 1988, and had been issued a citation and paid a fine in municipal court in each case. Hauerland testified that he had not been convicted of a crime since. The trial court overruled Moore's request to cross-examine Hauerland with the remote convictions in the jury's presence.

Thus, Moore preserved his complaint for review. *See* TEX.R.APP. P. 33.1(a).

The Texas Rules of Evidence generally provide for the impeachment of a witness by evidence of the witness's prior convictions:

> For the purpose of attacking the credibility of a witness, evidence that the witness has been convicted of a crime shall be admitted if elicited from the witness or established by public record but only if the crime was a felony or involved moral turpitude, regardless of punishment. . . .

TEX.R. EVID. 609(a). The general rule is that such convictions within the ten years prior to the witness's testimony are admissible only if the trial "court determines that the probative value of admitting this evidence outweighs its prejudicial effect to a party." *Id.* For "remote" convictions more than ten years old, however, a more stringent standard applies:

> Evidence of a conviction under this rule is not admissible if a period of more than ten years has elapsed since the date of the conviction or of the release of the witness from the confinement imposed for that conviction, whichever is the later date, unless the court determines, in the interests of justice, that the probative value of the conviction supported by specific facts and circumstances substantially outweighs its prejudicial effect.

TEX.R. EVID. 609(b). The balancing of the probative value and prejudicial effect of evidence of a witness's prior convictions usually arises where the witness is the defendant. In those cases, in weighing the probative value and prejudicial effect of evidence of convictions, the trial court should consider several factors:

(1) the impeachment value of the prior crime,

(2) the temporal proximity of the past crime and the witness's subsequent criminal history,

(3) the similarity between the past crime and the offense being prosecuted,

(4) the importance of the witness's testimony, and

(5) the importance of the credibility issue.

*Theus v. State,* 845 S.W.2d 874, 880 (Tex. Crim.App.1992); *White v. State,* 21 S.W.3d 642, 646 (Tex.App.-Waco 2000, pet. ref'd). The impeachment value of crimes of deception is high, and their prejudicial effect is lower than that of crimes of violence. *Theus* at 880; *White* at 647. The passage of time between the witness's last conviction and the time of the witness's testimony tends to reduce the conviction's probative value. *Id.* The similarity of the prior conviction and the charged offense is not applicable where, as here, the witness does not stand charged with an offense. Lastly, the importance of the witness's testimony, and thus the importance of the witness's credibility, decrease with the corroboration of the testimony by other evidence; and so decreases the probative value of evidence of the witness's convictions. *Id.*

In ruling on the admissibility of prior convictions for impeachment, the trial court has "wide discretion." *Theus* at 881; *White* at 646. Thus, an appellate court may reverse such a ruling only for a "clear abuse of discretion." *Theus* at 881. The trial court abuses its discretion in ruling on the admissibility of such evidence only if the ruling lies "outside the zone of reasonable disagreement." *Id.; White* at 646.

Theft is a crime of moral turpitude. *Bowden v. State,* 628 S.W.2d 782, 788 (Tex. Crim.App.1982); *Jackson v. State,* 50 S.W.3d 579, 592 (Tex.App.-Fort Worth 2001, pets. ref'd).

The trial court did not err in excluding evidence of Hauerland's remote theft convictions. The dates of Hauerland's convictions are not in the record, but the parties do not dispute that the convictions were remote. In themselves, Hauerland's two citations for petty theft some thirteen or fourteen years before trial, without any intervening convictions, have little bearing on Hauerland's present credibility. Moreover, at least five other witnesses testified to Moore's threats against Hauerland. Thus, the trial court did not abuse its discretion in finding that the probative value of the convictions did not outweigh the danger of unfair prejudice. I would overrule Moore's third issue.

## MOTION TO QUASH THE INDICTMENT

In his fourth issue, Moore contends that the trial court erred in overruling Moore's motion to quash the indictment. Moore forfeits his issue on appeal.

Prior to trial, Moore filed a motion to quash the indictment on the grounds that:

> It is alleged in COUNT TWO of the Indictment that the defendant did threaten to harm another, to-wit: J. Haverland, a public servant, "by an unlawful act ... [.]" Said COUNT TWO fails to allege[ ] any manner and means by which the Defendant committed an "unlawful act."

On the day of trial, Moore presented the motion to the trial court, and argued, "there's no act alleged and I was just asking for the manner and means of the unlawful act, that it be stated with specificity to give us notice of what we're accused of." The trial court overruled the motion. Moore thus preserved the complaint at trial. *See* TEX.R.APP. P. 33.1(a).

But Moore forfeits his complaint on appeal. Moore's issue presented on appeal does not comport with his trial complaint. An appellant who presents an issue on appeal other than that presented in the trial court forfeits the issue on appeal. *See* TEX.R.APP. P. 33.1; *Turner,* 87 S.W.3d at 117; *Montoya,* 43 S.W.3d at 571.

At trial, Moore complained of the indictment's notice of the manner and means of the unlawful *act* that he threatened to commit against Hauerland. On appeal, relying on *Doyle v. State,* Moore complains of the indictment's notice of the manner and means by which he *communicated* the threat to Hauerland. *See Doyle v. State,* 661 S.W.2d 726, 729 (Tex.Crim.App.1983) (per curiam). On appeal, Moore argues, "Prior to the commencement of trial, Appellant was entitled to know the specific *unlawful act* that constituted the *threat.* Was the *act* verbal, i.e., a statement made by Appellant, or was the *act* some physical conduct on the part of the Appellant, perceived as a threat by the complainant?" This issue on appeal does not comport with Moore's complaint at trial. Thus, I would overrule Moore's fourth issue.

## JURY INSTRUCTIONS

In his fifth issue, Moore contends that the trial court erred in overruling Moore's requested jury instructions on the duty to report child abuse and the confidentiality of counseling records. In his eighth issue, he argues that the trial court erred in overruling his requested instruction on simple assault as a lesser included offense. The court did not err.

The Texas Code of Criminal Procedure requires that the trial court instruct the jury on the "law applicable to the case." TEX.CODE CRIM. PROC. ANN. art. 36.14 (Vernon Supp.2004).

### Defensive Instructions

Moore requested two special charges in writing prior to the submission of the charge to the jury. His requested instruction on the duty to report suspected child

abuse or neglect generally tracked the language of Texas Family Code Sections 261.101, 261.103, and 261.105. *See* Tex. Fam.Code Ann. §§ 261.101(a)-(b), 261.103(a), 261.105(a) (Vernon 2002). His requested instruction on the confidentiality of investigations of suspected child abuse loosely tracked the language of Family Code Section 261.201. *See id.* § 261.201(a) (Vernon 2002). The trial court overruled Moore's requests. Thus, Moore preserved these complaints at trial. *See* Tex.R.App. P. 33.1(a).

At trial and on appeal, Moore argues that Hauerland was not acting as a public servant, as required for retaliation, at the time of the incident, since Hauerland's withholding of the check was contrary to those Family Code sections. The trial court was not required to give those defensive instructions.

"[A] defensive instruction is not required when the issue in question is not a statutorily-enumerated defense and merely serves to negate elements of the State's case." *Ortiz v. State*, 93 S.W.3d 79, 92 (Tex.Crim.App.2002), *cert. denied*, 538 U.S. 998, 123 S.Ct. 1901, 155 L.Ed.2d 824 (2003); *accord Giesberg v. State*, 984 S.W.2d 245, 248–51 (Tex.Crim.App.1998). Moore's requested instructions on the duty to report suspected child abuse and on the confidentiality of investigations of suspected child abuse do not implicate statutory defenses or affirmative defenses. Those instructions would only serve, if they are of any effect, to negate the "public servant" element of the offense of retaliation. Thus, the trial court did not err in refusing the instructions. I would overrule Moore's fifth issue.

### Lesser–Included–Offense Instruction

Before the submission of the charge to the jury, Moore requested in writing an instruction on simple assault by threat as a lesser included offense of retaliation. *See*

Tex. Penal Code Ann. § 22.01(a)(2). The trial court denied the request. Thus, Moore preserved this complaint at trial. *See* Tex.R.App. P. 33.1(a).

The analysis of whether an instruction on a lesser included offense is required has two steps. *Feldman v. State*, 71 S.W.3d 738, 750 (Tex.Crim.App.2002); *Aguilar v. State*, 682 S.W.2d 556, 558 (Tex.Crim.App. 1985). First, the court must "decide whether the offense is actually a lesser-included offense of the offense charged" under Texas Code of Criminal Procedure Article 37.09. *Feldman* at 750; *see Arevalo v. State*, 943 S.W.2d 887, 889 (Tex.Crim. App.1997); *Rousseau v. State*, 855 S.W.2d 666, 672 (Tex.Crim.App.1993); Tex.Code Crim. Proc. Ann. art. 37.09 (Vernon 1981). Next, the court must determine whether "the record contains some evidence that would permit a rational jury to find that the defendant is guilty *only* of the lesser offense," that is, guilty of the lesser offense and not guilty of the charged offense. *Feldman* at 750; *accord Rousseau* at 672. Only if some affirmative evidence so establishes the lesser included offense as a "valid rational alternative" to the charged offense is an instruction on the lesser included offense required. *Feldman* at 750; *Wesbrook v. State*, 29 S.W.3d 103, 113–14 (Tex.Crim.App.2000).

Moore argues, under Code of Criminal Procedure Article 37.09(2), that assault by threat is a lesser included offense of retaliation by threat. Article 37.09(2) provides that:

An offense is a lesser included offense if:

. . .

(2) it differs from the offense charged only in respect that a less serious injury or risk of injury to the same person, property, or public in-

terest suffices to establish its commission. . . .

TEX.CODE CRIM. PROC. ANN. art. 37.09. Moore argues that assault by threat, without the allegation of a public servant victim, is a less serious injury to the same victim than retaliation by threat against a public servant.

The elements of retaliation are that:

A person commits an offense if he intentionally or knowingly harms or threatens to harm another by an unlawful act:

(1) in retaliation for or on account of the service or status of another as a:

(A) public servant, witness, prospective witness, or informant; or

(B) person who has reported or who the actor knows intends to report the occurrence of a crime. . . .

TEX. PENAL CODE ANN. § 36.06(a). The indictment alleges that Moore intentionally or knowingly threatened to harm Hauerland by an unlawful act in retaliation for or on account of the services or status of Hauerland as a public servant. The indictment also pleaded that Hauerland's services or status as a public servant was as Venus ISD superintendent, and that the unlawful act was to harm Hauerland.

The elements of assault by threat are that:

A person commits an offense if the person:

. . .

(2) intentionally or knowingly threatens another with imminent bodily injury, including the person's spouse. . . .

TEX. PENAL CODE ANN. § 22.01(a)(2).

The presence or absence of a victim's service or status as a public servant does not render the injury to the victim more or less serious for purposes of Article 37.09.

More serious and less serious injuries are usually distinguished, for purposes of determining lesser included offenses, as between the less serious, bodily injury and the more serious, serious bodily injury. *See Hall v. State,* 81 S.W.3d 927, 931 (Tex. App.-Dallas 2002, pet. granted in part); TEX. PENAL CODE ANN. § 1.07(a)(8), (46) (Vernon 2003). Thus, the trial court did not err in denying Moore's requested lesser included instruction. I would overrule Moore's eighth issue.

ELECTION

In his seventh issue, Moore contends that the trial court erred in overruling his request that the State elect between the two counts of the indictment. Moore argues that the court should have required the State to elect to proceed under the more specific of two offenses *in pari materia.* The trial court did not err in overruling Moore's request.

Moore was indicted for one count of assault on a public servant by threat and for one count of retaliation against a public servant by threat. Prior to trial, Moore filed a motion to require the State to elect to proceed on only one count, on the grounds that both counts "allege the two different manners and means of committing the same statutory offense" of assault. Moore did not argue on which count the State must proceed. The trial court overruled the motion.

On appeal, Moore argues that assault on a public servant and retaliation against a public servant are *in pari materia.* Statutes are *in pari materia* when they "deal with the same general subject, have the same general purpose, or relate to the same person or thing or class of persons or things." *Huynh v. State,* 901 S.W.2d 480, 483 (Tex.Crim.App.1995) (quoting *Cheney v. State,* 755 S.W.2d 123, 126 (Tex.Crim. App.1988)); *Alejos v. State,* 555 S.W.2d

444, 449–50 (Tex.Crim.App.1977) (op. on reh'g). "Similarity of purpose or object is the most important factor in assessing whether two provisions are in *pari materia." Burke v. State,* 28 S.W.3d 545, 547 (Tex.Crim.App.2000). Statutes may conflict "[w]here one statute deals with a subject in general terms, and another deals with a part of the same subject in a more detailed way." *Id.* at 546–47. When such general and specific statutes *in pari materia* conflict irreconcilably, the specific statute controls. TEX. GOV'T CODE ANN. § 311.026 (Vernon 1998); *see Burke* at 546–47. Thus, when general and specific penal statutes *in pari materia* irreconcilably conflict, the State may prosecute only under the specific statute. *Burke* at 547 n. 3.

Moore fails to show that the trial court erred in overruling his motion for election. On appeal, Moore argues only that the indictment pleaded the manner and means of assault more specifically than it pleaded the manner and means of retaliation. The specificity of pleading, however, does not determine whether statutes are *in pari materia* or, if they are *in pari materia,* which is the more specific. Moore does not argue that assault is the more specific statute as a matter of legislative intent. Accordingly, to the extent that Moore's argument on appeal comports with his argument at trial, the argument is inadequately briefed. *See* TEX.R.APP. P. 38.1(h); *McCarthy v. State,* 65 S.W.3d 47, 49 n. 2 (Tex.Crim.App.), *cert. denied,* 536 U.S. 972, 122 S.Ct. 2693, 153 L.Ed.2d 862 (2002); *Tubbs v. State,* 57 S.W.3d 519, 521 (Tex.App.-Waco 2001, pet. ref'd). I would overrule Moore's seventh issue.

### DISCOVERY VIOLATIONS

In his ninth issue, Moore contends that the trial court erred in overruling Moore's motion for mistrial, which alleged that the State had violated the court's discovery orders, including a motion to disclose exculpatory evidence. Moore forfeited his complaints.

Some eight months before trial, Moore filed discovery motions. Moore's discovery motion under Texas Code of Criminal Procedure Article 39.14 moved the court to order the State to produce certain "evidentiary material which is in the possession, custody, or control of the State or any of its agencies," including:

[t]he criminal record of any prospective witness, including indictments, convictions, acquittals or charges now pending against any State witness which information might conceivably be useful to the defense to determine whether there exists bias or prejudice on the part of the State's witnesses.

*See* TEX.CODE CRIM. PROC. ANN. art. 39.14 (Vernon Supp.2004). His *Brady* motion moved the court to order the State to "[d]isclose to the Defendant any exculpatory and/or mitigating facts within the possession, custody, or control of the District Attorney or any of his agents." *See Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). Several weeks before trial, the court granted the *Brady* motion, and granted the Article 39.14 motion in part, including granting the paragraph quoted above.

On the second day of trial, Moore again sought enforcement of the court's orders. The attorney for the State responded that the State did not have in its possession any material covered by the discovery orders which the State had not already provided to Moore.

Later that day, the State called Dandy Earley, a Venus ISD principal and assistant superintendent. After Earley testified on direct examination, Moore elicited from Earley outside the presence of the jury that Earley had been indicted, but not arrested, for burglary. On the basis of the

State's non-disclosure of Earley's indictment, Moore moved for mistrial. The attorneys for the State stated on the record that they were unaware of the indictment. When the trial court asked Moore how the indictment was material, Moore responded only that the State's non-disclosure called into question the State's good faith. Moore did not move for a continuance. The trial court overruled the motion. Moore later introduced the indictment against Earley for purposes of the appellate record.

In order to preserve for appellate review a *Brady* complaint *concerning evidence that comes to light during trial,* the defendant must move for a continuance to prepare to respond to the evidence. *Wilson v. State,* 7 S.W.3d 136, 146 (Tex.Crim.App. 1999); *Yates v. State,* 941 S.W.2d 357, 364 (Tex.App.-Waco 1997, pet. ref'd); *Apolinar v. State,* 106 S.W.3d 407, 421 (Tex.App.-Houston [1st Dist.] 2003, pet. granted on other grounds); *but see Keeter v. State,* 105 S.W.3d 137, 144 (Tex.App.-Waco 2003, pet. granted) (plurality op.) (dicta) ("*Brady* claims should ... need not be 'preserved' for appellate review."). Likewise, in order to preserve a complaint concerning discovery, a party must move for a continuance. *Smith v. State,* 779 S.W.2d 417, 431 (Tex. Crim.App.1989).

Moore failed to move for a continuance to prepare to respond to the evidence of the indictment against Earley, which evidence, in any case, was already in Moore's possession. Thus, Moore forfeited his complaint. I would overrule Moore's ninth issue.

## CONCLUSION

I would affirm the judgment.

PER CURIAM.

## ORDER

Appellant's motion for rehearing is granted in part. The opinion and judg-ment dated March 31, 2004 are withdrawn, and the opinions and judgment of even date herewith are substituted therefor.