COURT OF 
APPEALS
SECOND DISTRICT OF TEXAS
FORT WORTH
 
NO. 2-04-207-CR
 
 
ERIC 
PAUL MICHAEL                                                             APPELLANT
  
V.
  
THE 
STATE OF TEXAS                                                                  STATE
 
  
------------
 
FROM 
THE 371ST DISTRICT COURT OF TARRANT COUNTY
 
------------
 
MEMORANDUM OPINION[1]
 
------------
I. Introduction
        Appellant, 
Eric Paul Michael (“Michael”), appeals from his convictions for aggravated 
sexual assault and indecency with a child.  In his sole point on appeal, 
Michael contends that the trial court abused its discretion when it allowed the 
State to bolster the credibility of its essential witness.  We affirm.
II. Background Facts and Procedural History
        At 
the time of the alleged incident, the complainant, H.R., was spending the night 
in Michael’s home as a guest of his two daughters. H.R. and Michael’s two 
daughters slept in a small guestroom on a pallet of sleeping bags.  H.R. 
testified that she awoke at 1:00 a.m. to find Michael kneeling beside her and 
“touching himself.”  She testified that he was not wearing a shirt and 
that his shorts were pulled down.  She indicated that she had been sleeping 
on her right side but that Michael had rolled her over onto her back.  She 
stated that he then moved to her feet, pulled down her shorts, and began licking 
her “vagina” [sic].  She testified that after five or ten minutes he 
stopped, pulled up her shorts, said “thank-you,” and left the room.
        H.R. 
did not tell anyone of this incident until several months later, when after 
watching an episode of “The Practice” she told her mother.  The next 
day, H.R.’s mother called Child Protective Services and took her daughter to 
the Grapevine police department where they filed a report.  H.R. then gave 
a videotaped interview.  During cross-examination of H.R., Michael’s 
defense counsel brought out discrepancies between H.R.’s testimony at trial 
and the videotaped interview.  In rebuttal, the State called H.R.’s 
former second grade teacher to offer testimony as to H.R.’s character for 
truthfulness.  Michael’s defense counsel objected to this testimony on 
the grounds that H.R.’s character or credibility had not been attacked and 
that any testimony regarding her character for truthfulness would be improper 
“bolstering.”  The trial court overruled the objection and allowed the 
testimony of H.R.’s second grade teacher.
III. Evidence of Truthful Character
        In 
his sole point on appeal, Michael argues that the trial court abused its 
discretion by allowing the State to bolster H.R.’s credibility through opinion 
testimony that H.R. had good character for truth when H.R.’s credibility had 
not been attacked through opinion testimony or otherwise.  The State 
responds that the testimony regarding H.R.’s good character for truthfulness 
was admissible because it was relevant and because Michael had attacked her 
character for truthfulness within the meaning of Texas Rule of Evidence 
608(a)(2).  See Tex. R. Evid. 
608(a)(2).
A. Standard of Review
        We 
review the trial court's decision to admit or exclude evidence under an abuse of 
discretion standard.  Burden v. State, 55 S.W.3d 608, 615 (Tex. 
Crim. App. 2001); Green v. State, 934 S.W.2d 92, 101-02 (Tex. Crim. App. 
1996), cert. denied, 520 U.S. 1200 (1997); Montgomery v. State, 
810 S.W.2d 372, 379-80 (Tex. Crim. App. 1990).  The test for abuse of 
discretion is not whether, in the opinion of the reviewing court, the facts 
present an appropriate case for the trial court's action; rather, it is a 
question of whether the court acted without reference to any guiding rules or 
principles, and the mere fact that a trial court may decide a matter within its 
discretionary authority differently than an appellate court does not demonstrate 
such an abuse.  Montgomery, 810 S.W.2d at 391.  We will not 
reverse a trial courts ruling on the admission of evidence as long as the ruling 
is within the zone of reasonable disagreement.  Id.
B. Analysis
        Rule 
608(a) of the Texas Rules of Evidence provides for the impeachment and 
rehabilitation of a witness’s credibility. Rule 608(a) provides that:
  
The credibility of a witness may be attacked or supported by evidence in the 
form of opinion or reputation, but subject to these limitations:
  
(1) the evidence may refer only to character for truthfulness or untruthfulness, 
and
  
(2) 
evidence of truthful character is admissible only after the character of 
the witness for truthfulness has been attacked by opinion or reputation evidence 
or otherwise.

 
Tex. R. Evid. 608(a) (emphasis added).
        During 
direct examination, H.R. testified that Michael had rolled her over onto her 
back and that she had been lying on her right side prior to the incident.  
During cross-examination of H.R., Michael’s defense counsel brought out 
discrepancies between H.R.’s testimony at trial and her videotaped interview. 
In particular, it was brought out on cross-examination that contrary to her 
direct testimony, H.R. stated in her videotaped interview that she was lying on 
her left side during the entire ordeal and that she did not say anything in her 
videotaped interview about being rolled over.
        The 
State points to the following part of H.R.’s cross-examination as supporting 
its position that H.R’s character for truthfulness was attacked by Michael:
   
[Defense Counsel]: Okay.  Do you remember after you told your mom that you 
went and spoke with a lady about what had happened to you?
 
[H.R.]: 
Yes, ma’am.
 
[Defense 
Counsel] Okay.  And do you remember her telling you before you started 
talking about this that there was a camera in the room?
 
        [H.R.] 
Yes, ma’am.
 
[Defense 
Counsel]: Okay. And she told you that she was taping–
 
        [H.R.]: 
Yes.
 
[Defense 
Counsel]: – the interview, right?
 
        [H.R.]: 
Yes, ma’am.
 
[Defense 
Counsel]: Okay. And do you remember her talking about how important it was to 
tell the truth?
 
        [H.R.]: 
Yes, ma’am.
 
[Defense 
Counsel]: And, in fact, she even asked you about – she even gave examples?
 
        [H.R.]: 
Yes.
 
[Defense 
Counsel]: Okay. What – what would be a truth and what would be a lie?
 
[H.R.]: 
Yes.
* 
* *
 
[Defense 
Counsel]: Do you remember what you told her?
 
        [H.R.]: 
Yes ma’am.
 
[Defense 
Counsel]: Okay. When you were talking to her, did you tell her that you were 
laying on your left side and that [A.M.] and [J.M.] were on either side of you?[2]
 
        [H.R.]: 
Yes, ma’am.
 
[Defense 
Counsel]: Okay. In fact, she had some little dolls, —
 
        [H.R.]: 
Yes, ma’am.
 
[Defense 
Counsel]: – right? She had a female doll and a male doll?
 
        [H.R.]: 
Yes, ma’am.
 
[Defense 
Counsel]: Okay. And she gave you the female doll and asked you to show her how 
you were laying?
 
[H.R.]: 
Yes, ma’am.
 
[Defense 
Counsel]: And you laid the doll on your left – on its left side?
 
[H.R.]: 
Yes.
* 
* *
 
[Defense 
Counsel]: Okay. And you – you never said anything to her about being rolled 
over or anything else, did you?[3]
 
[H.R.]: 
I don’t think so, no.
* 
* *
 
[Defense 
Counsel]: And y’all’s feet were down toward the –
 
[H.R.]: 
TV.
 
[Defense 
Counsel]: TV hutch. Okay. And do you recall telling the – the – the lady 
that you spoke with that you – you had – you never moved off your left side?
 
[H.R.]: 
Yes, ma’am.
* 
* *
 
[Defense 
Counsel]: Okay. And now, were you – were you on your side when all this was 
going on?
 
[H.R.]: 
I think he had rolled me onto my back.
 
[Defense 
Counsel]: Okay. But you didn’t say that when you were talking to the lady?
 
[H.R.]: 
Right.
 
[Defense 
Counsel]: Okay. In fact, the lady asked you that question a couple of times, 
right?
 
[H.R.]: 
I think so.
 
[Defense 
Counsel]: Okay. And all – and every time you told her that, you stayed on your 
left side?
 
[H.R.]: 
Okay. Yes, ma’am.
 
* 
* *
 
[Defense 
Counsel]: Okay. Now, when you’re describing everything that has occurred to 
you, do you remember – when you talked to the – the investigator who did the 
tape –
 
[H.R.]: 
Yes.
 
[Defense 
Counsel]: – the lady there at CPS, okay, do you recall her asking you what Mr. 
Michael’s penis looked like?
 
[H.R.]: 
Yes, ma’am.
 
[Defense 
Counsel]: Okay. Do you remember what you told her?
 
[H.R.]: 
Yes, ma’am.
 
[Defense 
Counsel]: Okay. What was that?
 
[H.R.]: 
I just told her it was sticking out like – she asked me if it was sticking up 
or down or anything like that. I just told her it was sticking out.
 
[Defense 
Counsel]: Okay. She asked you two questions. The first question was what it 
looked like. Do you recall telling her it looked normal?
 
[H.R.]: 
Yes.
 
[Defense 
Counsel]: Okay. Are you sure that you told her that it was sticking out?
 
[H.R.]: 
I think I told her it was sticking down.
 
[Defense 
Counsel]: That it was hanging down?
 
[H.R.]: 
Yes.
 
[Defense 
Counsel]: Okay. So your statement a minute ago that it was sticking out was 
incorrect?
 
[H.R.]: 
Yes, ma’am.
 
* 
* *
 
[Defense 
Counsel]: Okay. And she asked you – do you remember her asking you the 
question about, well, how did this happen if your legs were here or here? Do you 
recall that?
 
[H.R.]: 
Yes, ma’am.
 
[Defense 
Counsel]: Okay. And do you recall telling her that you – you weren’t sure 
–
 
[H.R.]: 
Yes.
 
[Defense 
Counsel]: – how that happened?
 
[H.R.]: 
Yes.
 
[Defense 
Counsel]: Because of the position that you were in?
 
[H.R.]: 
Yes.
 
[Defense 
Counsel]: Okay. And you weren’t sure?
 
[H.R.]: 
Yes.
 
[Defense 
Counsel]: Okay. And – and you again stated that you still didn’t see how he 
could have done what he did because the room was so small?
 
[H.R.]: 
Yes.
 
[Defense 
Counsel]: And you were on your left side?
 
[H.R.]: 
Right.
   
        The 
State argues the Michael’s cross-examination of H.R. by use of prior 
inconsistent statements aimed at impeaching her testimony amounted to an attack 
on H.R.’s character for truthfulness under the “otherwise” provision of 
Rule 608(a)(2), opening the door for rebuttal evidence as to H.R.’s character 
for truthfulness. Michael, on the other hand, argues that his questioning of 
H.R. was nothing more than a thorough cross-examination, not an attack on 
H.R.’s character for truthfulness. We agree with the State.
        Rule 
608(a) conditions the admissibility of evidence of a witness’s good character 
for truthfulness to situations where the character of the witness for 
truthfulness has been attacked. Tex. R. 
Evid. 608(a); see Moore v. State, 143 S.W.3d 305, 324-35 (Tex. 
App.—Waco 2004, pet. ref’d) (Gray, C.J., concurring and dissenting) (stating 
that to be “admissible to rehabilitate an impeached witness’s credibility, 
the method of impeachment must have attacked the witness’s character 
for truthfulness, not just the witness’s testimony”).
        Evidence 
of a witness’s character for truthfulness is not admissible simply because 
evidence has been admitted conflicting with the witness’s testimony. See 
Wallace v. State, 501 S.W.2d 883, 886 (Tex. Crim. App. 1973). Nor is 
evidence of a witness’s character for truthfulness admissible simply because 
the witness has been subjected to a vigorous cross-examination. Moore, 
143 S.W.3d at 315.  However, Texas courts have historically treated the 
impeachment of a witness by prior inconsistent statements as an attack on the 
witness’s veracity character permitting evidence of good character for truth 
and veracity in rebuttal.  See O’Bryan v. State, 591 S.W.2d 464, 
476 (Tex. Crim. App. 1979) (quoting 1 McCormick 
and Ray, Texas Law of Evidence § 772 (2d ed. 1956)).  Thus, where a 
witness is placed in the position of testifying differently from that which she 
previously testified, i.e., where the witness is impeached by prior inconsistent 
statements, evidence of a witness’s veracity character is admissible in 
rebuttal.  See Duckett v. State, 797 S.W.2d 906, 918 (Tex. Crim. 
App. 1990), overruled on other grounds, Cohn v. State, 849 S.W.2d 817, 
819 (Tex. Crim. App. 1993); O’Bryan, 591 S.W.2d at 476; Adams v. 
State, 514 S.W.2d 262, 264 (Tex. Crim. App. 1974) (citing Acker v. State, 
421 S.W.2d 398, 401 (Tex. Crim. App. 1967)); see also Foggle v. State, 
632 S.W.2d 402, 405 (Tex. App.—Forth Worth, no pet.) (citing Wallace v. 
State, 501 S.W.2d 883, 886 (Tex. Crim. App. 1993) (indicating that unless 
the State attempts to prove a defendant’s good or bad reputation for veracity, 
or shows contradictory statements of the defendant, defendant may 
not prove his reputation for truth or veracity)).
        Here, 
H.R. was placed in a position of having testified differently than her previous 
statements in the videotaped interview.  This discrepancy is material 
because in her videotaped interview H.R. admitted that she could not explain how 
the alleged incident could have happened while she was lying on her left side. 
Further, just prior to confronting H.R. with her prior inconsistent statements, 
Michael’s defense counsel asked H.R. if she remembered the interviewer 
discussing with her the importance of telling the truth and providing examples 
of what would be the truth and what would be a lie.  Thus, after reviewing 
the testimony, we cannot say that the trial court abused its discretion in 
allowing the objected-to testimony regarding H.R.’s character for truthfulness 
because the trial court could have reasonably determined that Michael’s 
cross-examination of H.R. was an attack on her character for truthfulness, 
opening the door to rehabilitative character testimony pursuant to Rule 
608(a).  We overrule Michael’s sole point.
IV. Conclusion
        Having 
overruled Michael’s sole issue, we affirm the trial court’s judgment.
  
  
                                                          BOB 
MCCOY
                                                          JUSTICE
  
 
PANEL 
B:   HOLMAN, GARDNER, and MCCOY, JJ.
 
PUBLISH
 
DELIVERED: 
July 14, 2005


NOTES
1.  
See Tex. R. App. P. 47.4.
2.  
H.R. testified during direct examination that she had been sleeping on her right 
side.
3.  
H.R. testified during direct examination that Michael had rolled her over.