# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-06-00077-CR

**Otis R. Thompson, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM COUNTY COURT AT LAW NO. 4 OF TRAVIS COUNTY, NO. 705-081, HONORABLE WILLIAM E. BENDER, JUDGE PRESIDING

### M E M O R A N D U M   O P I N I O N

A jury found Otis Thompson guilty of assault with injury and family violence. The court assessed sentence at 200 days in the county jail and a $500 fine. *See* Tex. Penal Code Ann. § 22.01 (West Supp. 2006). On appeal, Thompson argues that the trial court erred by excluding evidence of the complaining witness Onteria Rhoden's criminal history. *See* Tex. R. Evid. 609. He contends that this exclusion violated his Sixth Amendment right to cross-examine and confront the witness by not allowing proper impeachment. *See* U.S. Const. amend. VI. We affirm.

Rhoden testified that on June 27, 2005, she and Thompson, her common-law husband, started arguing while he was driving the two of them home. According to Rhoden, the argument escalated into physical violence with Thompson slapping and punching her in the face and ripping out her hair extensions. She testified that, at one point, Thompson stopped the car, continued assaulting her, and dragged her from the car, lacerating her leg.

Passing motorist Gloria Ann Clark and her grandson testified that they saw a man beating a woman in a parked car. Clark drove by the scene slowly as she was stopping to pick up her grandson, who was standing within viewing distance. According to Clark, the woman being assaulted was on her back in the car and was kicking and screaming. Clark's grandson said he heard the man exclaim that the woman bit him. Clark testified that the woman fell out of the car and the man put her back in. Clark's grandson described the woman as "flying" out of the car and then getting back in. Both said the assault resumed. Later, when Clark passed the scene again, she saw the woman talking to police.

The police officers who arrived at the scene testified that Rhoden's injuries were consistent with her account of the assault. Officer John Mosteller arrived first. He testified that, when he approached the car, both Thompson and Rhoden were inside and that Rhoden appeared upset. Mosteller separated Thompson and Rhoden for questioning. Mosteller testified that Rhoden told him the assault began while she and Thompson were driving home after attending a family barbecue and a concert. Mosteller also testified that Thompson first told him that Rhoden had gotten into a fight with her sister. However, according to Mosteller, about fifteen minutes later, Thompson claimed that Rhoden assaulted him after accusing him of infidelity. Mosteller testified that Rhoden told him the argument started after Thompson told her he was leaving her for another woman. Mosteller testified that, based on his investigation, he believed that Thompson had assaulted Rhoden. Officer Paul Tronco took photographs showing Rhoden's injuries and Thompson's condition after the incident. Tronco testified that he talked with both Rhoden and Thompson. Tronco identified Thompson as the man he interviewed at the scene. Tronco also testified that Thompson described

an argument with Rhoden over their relationship that escalated into a physical altercation. Tronco said that he deduced from the interviews and physical evidence that Thompson was the aggressor.

Thompson was charged by information with assault with injury and family violence. The case was tried to a jury. At trial, Thompson sought to impeach Rhoden with evidence of her 1994 conviction for forgery and her 2003 conviction for theft by check, but the court excluded the evidence on the ground that its prejudicial effect would outweigh its probative value.[1] The jury returned a guilty verdict and the court assessed punishment at 200 days in the county jail and a $500 fine.

On appeal, Thompson contends that the trial court erred by refusing to admit evidence of Rhoden's previous convictions for forgery and theft by check. He asserts that the court's exclusion of this evidence violated his constitutional right to confront and cross-examine a witness against him. *See* U.S. Const. amend. VI; Tex. R. Evid. 609.

The Sixth Amendment guarantees criminal defendants the right to confront and cross-examine witnesses against them. *See* U.S. Const. amend. VI. While the Sixth Amendment protects an accused's right to cross-examine witnesses, a trial judge may limit cross-examination based on concerns about, among other things, prejudice or confusion of the issues. *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986). The rules of evidence strike a similar balance between the right to confront and cross-examine and the avoidance of prejudice. A defendant can use evidence of a witness's felony criminal convictions or crimes involving moral turpitude to attack a witness's

---

[1] Before trial, the court granted the State's motion in limine with respect to previous convictions of witnesses. During trial, outside the presence of the jury, Thompson's attorney offered documents showing Rhoden's criminal history for the appellate record.

3

credibility, but only if the court determines that the probative value of admitting such evidence would outweigh its prejudicial effect. Tex. R. Evid. 609(a). The erroneous exclusion of evidence is not ordinarily of constitutional magnitude. *Fox v. State*, 115 S.W.3d 550, 563 (Tex. App.—Houston [14th Dist.] 2002, pet. ref'd). The exclusion of evidence will be constitutional error only if the evidence is such a vital portion of the defense that its exclusion effectively precludes the defendant from presenting a defense. *Potier v. State*, 68 S.W.3d 657, 665 (Tex. Crim. App. 2002).

The exclusion of the evidence of Rhoden's criminal history did not prevent Thompson from presenting his defense. At trial, Thompson argued that while he was involved in an altercation with Rhoden, he acted in self-defense. He claimed Rhoden attacked him because she was angry that he was ending their relationship.[2] Photographic evidence of the wounds on the inside of his hands provided some support for his argument that his hands were open and used in self-defense. In addition, inconsistencies between Rhoden's testimony at trial and her statements to police at the scene provided Thompson the opportunity to challenge her version of the incident.[3] We are not persuaded that the exclusion of Rhoden's criminal history, by itself, significantly constrained Thompson's ability to question Rhoden's credibility. Evidence admitted by the trial court allowed Thompson to present a case and argue that he was not the aggressor in the fight and to challenge

---

[2] Thompson did not testify. He relied on the testimony of the police officers and physical evidence for his version of events.

[3] Police testified that Rhoden said at the scene that she and Thompson had attended a family barbecue and a concert and that their argument was prompted by his announcement that he was leaving the relationship. At trial, Rhoden testified that they had attended a flea market (and not the other events), that Thompson did not tell her he was leaving her, and that she did not remember accusing him of infidelity.

4

Rhoden's version of the altercation. The exclusion of Rhoden's criminal history does not, on this record, rise to the level of a violation of Thompson's constitutional right to confront and cross-examine a witness against him.

Thompson also complains that the exclusion of Rhoden's criminal history prevented him from challenging his identification as the assailant. He contends that Rhoden was the only eyewitness to the assault and the only person to identify him as the person who assaulted her. He then argues that additional evidence undermining her credibility could have caused the jury to reject her identification. However, this argument in this Court does not square with the presentation of the case at trial and is not supported by the record.

Although police did not see the altercation, police found Rhoden and Thompson together at the scene of the reported assault shortly after the report. The officers testified that Thompson admitted to participating in the altercation with Rhoden, but claimed he did so in self-defense. Thus, Thompson does not dispute that he was the person other than Rhoden involved in the assault. His claim at trial was not that Rhoden's identification of him as the person she fought with was wrong. It was that he was the victim of assault rather than the perpetrator. In closing argument, Thompson's counsel did not deny that an altercation took place or that Thompson was involved. Rather, he admitted that Thompson participated, but argued that Thompson only participated in self-defense. The exclusion of Rhoden's criminal history did not affect the identification of Thompson as a participant in the altercation between he and Rhoden. Whether he was the assailant or the victim is a matter of weighing evidence other than evidence of his identification.

5

Although Thompson has not demonstrated an error of constitutional magnitude with respect to the trial court's decision to exclude evidence of Rhoden's criminal history, the question of whether the trial court erred by excluding this evidence remains. When assessing whether to admit evidence of felonies or crimes involving moral turpitude to impeach a non-defendant witness, courts use a nonexclusive list of five factors. *See* Tex. R. Evid. 609; *Theus v. State*, 845 S.W.2d 874, 880 (Tex. Crim. App. 1992); *Moore v. State*, 143 S.W.3d 305, 312-13 (Tex. App.—Waco 2004, pet. ref'd) (adapting *Theus* test for impeachment of non-defendant witnesses).[4] The factors include: (1) the impeachment value of the prior crime; (2) the temporal proximity of the prior conviction to the date the witness testifies and the witness's subsequent history; (3) the similarity between the past crime and any conduct of the witness at issue in the present trial; (4) the importance of the witness's testimony; and (5) the importance of the witness's credibility. *Moore*, 143 S.W.3d at 312-13. An appellate court reviews a trial court's decision to admit or exclude evidence for an abuse of discretion. *Shuffield v. State*, 189 S.W.3d 782, 793 (Tex. Crim. App. 2006). Unless the trial court's decision was outside the zone of reasonable disagreement, an appellate court should uphold the ruling. *Id*.; *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1990).

The first three *Moore* factors weigh in favor of admission. First, forgery and theft by check are crimes involving moral turpitude that have impeachment value. *Hardeman v. State*, 868 S.W.2d 404, 405 (Tex. App.—Austin 1993), pet. dism'd); *Ludwig v. State*, 969 S.W.2d 22, 28

---

[4] While the *Theus* test assesses the similarity between the defendant's past crime and the offense being prosecuted, the *Moore* test assesses the similarity between the witness's past crime and the witness's conduct during the incident at issue. *Compare Theus v. State*, 845 S.W.2d 874, 880 (Tex. Crim. App. 1992), *with Moore v. State*, 143 S.W.3d 305, 312-13 (Tex. App.—Waco 2004, pet. ref'd).

(Tex. App.—Fort Worth 1998, pet. ref'd). Second, Rhoden's convictions were recent enough to have some probative value. Rhoden completed probation for the 1994 conviction in 2000, but was convicted of another crime involving moral turpitude in 2003. *See* Tex. R. Evid. 609(c). Third, the absence of similarities between Rhoden's previous convictions and her conduct on the occasion in question does not create confusion between her behavior associated with her previous convictions and her behavior in this case. *See Moore*, 143 S.W.3d at 313.

The fourth and fifth factors, however, weigh against admission of the prior convictions. Rhoden's version of events was corroborated by other evidence. Police testified that Thompson admitted struggling with Rhoden but claimed that he acted in self-defense. Thompson's counsel also conceded the issue of identity at trial by acknowledging Thompson's involvement in the struggle with Rhoden. The assertion of self-defense was countered by Clark's testimony that she saw "a lady was getting beat up." The police officers testified that Rhoden's injuries were consistent with her version of the incident and that their investigation revealed that Thompson had assaulted Rhoden. Photographs admitted into evidence allowed the jury to assess the relative damage the parties inflicted on one another as well as who was the most likely aggressor. Thus, the credibility of Rhoden's testimony was not dispositive of Thompson's claim of self-defense or challenge to his identification. The trial court did not err in weighing these factors and excluding the evidence of Rhoden's criminal history.

Even if the trial court erred by excluding evidence of Rhoden's criminal history for the purpose of impeachment, we conclude the error was harmless. As discussed above, there was ample evidence supporting the identification of Thompson as Rhoden's assailant, including

testimony from police that Thompson admitted hitting Rhoden in self-defense. While that admission may raise an excuse for the assault, it concedes identity. The self-defense claim was not affected by the exclusion of the evidence because there was credible evidence from sources other than Rhoden refuting Thompson's theory of self-defense. On this record, we conclude that there is no reasonable possibility that excluding Rhoden's criminal history for the purpose of impeachment, either alone or in context, moved the jury from a state of nonpersuasion to one of persuasion with respect to the issue in question. Nor did any error in the exclusion of that evidence affect a substantial right. Accordingly, we find any error in the exclusion of the impeachment evidence harmless. *See* Tex. R. App. P. 44.2.

        Affirmed.

_____

G. Alan Waldrop, Justice

Before Justices Patterson, Pemberton and Waldrop

Affirmed

Filed:   June 8, 2007

Do Not Publish

8